UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
MIDDLE DIVISION

| | |
|---|---|
| MARLORITA BATTLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. _____ |
| | ) |
| | ) JURY DEMANDED |
| A&E TELEVISION NETWORKS, LLC and | ) |
| WILD EYES PRODUCTIONS, INC. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Comes now the Plaintiff, Marlorita Battle, by and through counsel, and sues the Defendants and, for cause, would state and show as follows upon information and belief:

*Parties*

1. The Plaintiff, Marlorita Battle is a citizen and resident of Sumner County, Tennessee.

2. The Defendant, A&E Television Networks, LLC ("A&E"), is a joint venture of the Hearst Corporation, Disney-ABC Television Group, and NBC Universal that operates a national television network that airs programming in every State including Tennessee. It is located and performs business at 235 E. 45th Street, New York, NY 10017.

3.  The Defendant Wild Eyes Productions, Inc. ("Wild Eyes"), is a California corporation that produces original programming that is aired on the A&E television station. It may be served c/o Arcadia Berjonneau, 1301 Manhattan Avenue, Suite 201, Hermosa Beach, California 90254.

## *Jurisdiction and Venue*

4.  The television program that is the subject matter of this Complaint was filmed in Tennessee, shows persons residing in the Middle District of Tennessee, and was aired in the Middle District of Tennessee. All parties involved in this litigation reside in different states. The amount of damages in question exceeds $75,000.00.

5.  The Plaintiff avers that venue is proper in that the television program which is the subject matter of this lawsuit was filmed in Tennessee, shows persons residing in the Middle District of Tennessee, was aired in the Middle District of Tennessee, and the Defendants have transacted business in Tennessee by airing and selling the television program in question in Tennessee.

6.  The Plaintiff avers that this Court has personal and subject matter jurisdiction over this matter.

## *Facts*

7.  On or about August 30, 2009, Plaintiff visited her husband at Riverbend State prison where he was then incarcerated.

8.  Unbeknownst to Plaintiff, and without her consent, Defendant Wild Eyes, by and through its employees, did film Plaintiff and her infant child visiting her husband at prison that day. Images of Plaintiff were filmed for Defendant Wild Eyes' television program entitled "The Squad: Prison Police".

9.  The footage of Plaintiff filmed by Defendant Wild Eyes eventually appeared on an episode of the "The Squad" entitled "Conspiracy". Defendant A&E has broadcast this episode multiple

times on its network, through various cable on demand options, and has marketed the episode for sale as part of a dvd collection.

10. Specifically, the episode showed Plaintiff entering the prison and revealed a closeup image of Plaintiff's driver's license photograph. Thereafter, Plaintiff is shown interacting with her husband while one of the performers on the show, a member of the prison police squad, is shown monitoring Plaintiff via prison camera and commenting how outsiders are bringing drugs into the prison, specifically carrying such contraband inside their body cavities. More specifically, as images of Plaintiff are shown on the screen, this performer comments that women often bring drugs into the prison by hiding the contraband in their vaginas. Plaintiff is next shown walking toward and into the visitor restroom at the prison while the same performer excitedly utters that something is happening. He implies that Plaintiff is going to the restroom to retrieve contraband from inside her body. The next scene shows Plaintiff exit the restroom and kiss her husband goodbye. As she kisses her husband, the same performer makes comments implying that Plaintiff was passing drugs to her husband through this oral contact.

11. None of the allegations or statements asserted by Defendants, by and through their performers on the program, in this episode are true.

12. Defendants knew at the multiple times this episode aired that their allegations and statements against Plaintiff were not true.

13. Defendants have never received Plaintiff's consent to broadcast her image.

14. Defendants have never received Plaintiff's consent to broadcast an image of her driver's license.

15. Defendant is a private citizen and not a public figure.

16. Following broadcast of this episode, Plaintiff was contacted by multiple family members and acquaintances inquiring why Plaintiff was appearing on an episode of The Squad as a drug dealer.

17. Plaintiff has endured severe emotional trauma, mental anguish, stress, humiliation, and damage to reputation as a result of Defendants' actions.

## COUNT I: DEFAMATION/FALSE LIGHT

18. Plaintiff incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

19. Plaintiff has been defamed by the false assertions and allegations made by Defendants as set forth in the prior paragraphs of this Complaint.

20. These statements by Defendants were published and/or made each and every time the episode "Conspiracy" aired, was ordered through any type of cable on-demand system, or has been viewed on dvd.

21. Defendants knew these statements were false when made and were intended to harm the reputation and character of Plaintiff.

22. Defendants knew, or reasonably should have known, these statements cast Plaintiff in a false light.

23. Plaintiff's friends, family, and associates did see these defamatory statements about Plaintiff.

24. Plaintiff's reputation has been injured and diminished as a result of these statements.

25. Defendants' false statements about Plaintiff harmed Plaintiff's reputation and resulted in mental anguish, stress, humiliation and other damages to Plaintiff.

## COUNT II: DEFAMATION PER SE

26. Plaintiff incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

27. Defendants falsely stated that Plaintiff was engaged in the illegal activity of drug trafficking.

28. Defendants published false statements about Plaintiff's alleged criminal activity to persons and parties other than the Plaintiff.

29. Falsely accusing Plaintiff of having committed a crime constitutes slanderous defamation per se.

30. Defendants' false statements about Plaintiff harmed Plaintiff's reputation and resulted in mental anguish, stress, humiliation and other damages to Plaintiff.

## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

31. Plaintiff incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

32. Defendants intentionally and deliberately inflicted emotional distress on Plaintiff by exposing Plaintiff's private affairs to the public at large and by making false statements about Plaintiff to the public at large.

33. Defendants knew or should have known that emotional distress was the likely result of their conduct.

34. Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

35. The actions of the Defendants were the cause of Plaintiff's distress.

36. The emotional distress sustained by Plaintiff was severe and of a nature that no reasonable person could be expected to endure.

37. As a result of the Defendants' extreme and outrageous conduct, Plaintiff was, is, and with a high degree of likelihood, will continue to be emotionally distressed due to the intentional acts of Defendants, suffering from mental pain and anguish, severe emotional trauma, embarrassment, and humiliation.

## PRAYER FOR RELIEF

WHEREFORE, Premises Considered, Plaintiff prays:

1. That she have trial by jury.

2. That she be awarded compensatory damages in the amount of $75,000.00.

3. That she be awarded punitive damages in the amount of $300,000.00.

4. The disgorgement of any and all profits derived from the airing of the episode in which Plaintiff appears and the sales of any dvds in which Plaintiff appears.

5. That the Defendants be prohibited from broadcasting images of or broadcasting statements about Plaintiff.

6. That she be granted such other general and equitable relief as may be necessary and proper, including court costs in this case.

Respectfully submitted,

_____
Allen Woods, #23103
Law Office of Woods and Woods
PO Box 128498
Nashville, TN 37212
(615) 321-1426
Attorney for Plaintiff